Pages 1 - 44

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

Before The Honorable Barry Ted Moskowitz, Judge

UNITED STATES OF AMERICA,      )
                               )
          Plaintiff,           )
                               )
  VS.                          )      NO. 18-CR-03072-DMS
                               )
ANDREW HACKETT AND ANNETTA     )
BUDHU,                         )
                               )
          Defendants.          )
_____)

San Diego, California
Wednesday, September 25, 2019

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES:**

For Plaintiff:
                    ROBERT S. BREWER, JR.
                    United States Attorney
                    880 Front Street, Suite 6293
                    San Diego, California 92101
              BY:   **AARON ARNZEN, ESQ.**
                    **ANDREW J. GALVIN, ESQ.**
                    **ASSISTANT UNITED STATES ATTORNEYS**


For Defendant Andrew Hackett:
                    LAW OFFICE OF MARC S. NURIK
                    1551 Manning Avenue, Suite 302
                    Los Angeles, California 90024
              BY:   **MARC STEVEN NURIK, ESQ.**
                    **ATTORNEY AT LAW**


**(APPEARANCES CONTINUED ON FOLLOWING PAGE)**


Reported by:   James C. Pence-Aviles, RMR, CRR, CSR No. 13059
               Official Court Reporter

1  **APPEARANCES**:   (CONTINUED)

2  For Defendant Annetta Budhu:

3                         FEDERAL DEFENDERS OF SAN DIEGO, INC.
                         225 Broadway, Suite 900
                         San Diego, California 92101

4                 BY:   **JOSHUA J. JONES, ESQ.**

5                        **MICHELLE CYNTHIA ANGELES, ESQ.**
                        **ATTORNEYS AT LAW**

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

<u>**Wednesday - September 25, 2019**</u>                          <u>**11:44 a.m.**</u>

**P R O C E E D I N G S**

**---oOo---**

    **THE CLERK:** Calling Calendar Matter No. 1, 18-CR-3072, United States of America versus Andrew Hackett and Annetta Budhu.

    **MR. JONES:** Good morning, Your Honor. Joshua Jones, Federal Defenders, along with Michelle Angeles on behalf of Ms. Budhu, who's present on bond.

    **MR. NURIK:** Good afternoon, Your Honor. Marc Nurik on behalf of Andrew Hackett, who is present.

    **MR. ARNZEN:** Good morning, Your Honor. Aaron Arnzen and Andrew Galvin for the United States.

    **THE COURT:** All right. Good morning to you all.

    **MR. ARNZEN:** Good morning, Your Honor.

    **THE COURT:** So let's first talk about the schedule. Are the parties going to be ready, or is there a request for additional time? Then we'll take up the Government's motion for reciprocal discovery and then the motion to sever. All right?

    **MR. NURIK:** Your Honor, we have endeavored diligently to be ready for trial.

    As far as our ability to meet the October 28th trial date, I -- I frankly have to say that it would depend on Your Honor's rulings on the motions in limine. If the Government is

1 permitted to introduce these other so-called deals or matters,

2 we're going to be forced to defend them, and we're going to

3 need additional time to both investigate and determine if we

4 need more defense witnesses.

5      So right now, on the state of the record as it exists with

6 what is contained within the four corners of the indictment, we

7 will be prepared to go to trial, but I -- that's the best I can

8 tell the Court right now.

9           **THE COURT:**  All right.  Maybe we'll take this matter

10 up when we rule on the motions in limine that you mentioned.

11      Mr. Jones?

12      **MR. JONES:**  Your Honor, we would be in a similar

13 position, I think.  Given the current state of affairs, we

14 would be prepared to proceed for the October 28th date.

15      However, if there's going to be a substantial amount of

16 404(b) with regard to alleged other fraudulent activity of

17 which Ms. Budhu and Mr. Hackett are supposedly aware, I agree

18 that that would require some additional -- potentially

19 additional witnesses, certainly some additional investigation.

20           **THE COURT:**  Let's take up the Government's motion for

21 reciprocal discovery.

22           **MR. ARNZEN:**  Thank you, Your Honor.

23      The Government's entitled to reciprocal discovery.  We

24 have not received any yet.  We understand there's time until

25 trial.  We just don't want to get caught in a situation where

1  there's a witness or documents that are put forth before the

2  jury from the defense and we have not seen, and we'd like that

3  sufficiently in advance of trial to prepare adequately.

4       **THE COURT:**  Let's talk about the specifics of what you

5  are requesting.

6       **MR. ARNZEN:**  Your Honor, if they have experts, then we

7  should be entitled to any expert --

8       **THE COURT:**  Are you going to have any experts?

9       **MR. JONES:**  Your Honor, at this time, we don't

10  anticipate any expert testimony.

11       I'm anticipating potentially consulting an expert with

12  regard to a couple of the issues that were raised in the

13  motions in limine.  I don't think they would be a testifying

14  expert, but if they were going to be, I could provide that

15  notice very shortly, within a week, if that was going to

16  happen.

17       But I think that's highly unlikely.

18       **MR. NURIK:**  I agree, Your Honor, with that statement.

19       **MR. ARNZEN:**  And there is one more category as well,

20  Your Honor.

21       **THE COURT:**  Well, let's set a deadline for the expert

22  report by the defense.

23       So how many weeks before trial do you propose?

24       **MR. JONES:**  Your Honor, I think, based on what I would

25  be anticipating, we could provide notice three weeks prior to

1    the 28th.  So I guess that would be the 7th.

2             **THE COURT:**  Do you agree with that?

3             **MR. NURIK:**  I do.

4             **THE COURT:**  All right.  You have already put out in

5    discovery your expert reports; correct?

6             **MR. ARNZEN:**  Yes, Your Honor.  We've given a detailed

7    disclosure to the defense of what we expect our expert to

8    testify to, if allowed.

9             **THE COURT:**  All right.  The next category?

10            **MR. ARNZEN:**  The next cat- -- there are two more

11   categories, Your Honor, the first of which concerns one of the

12   motions in limine.

13        If there is an advice-of-counsel defense or even what's

14   commonly referred to as a quasi-advice-of-counsel defense or

15   presence of counsel, then the United States should have a

16   chance to receive all of the waived -- the materials that would

17   have been privileged.  A waiver has to happen.

18        We need time to review those materials to see if the

19   defendants provided all of the relevant information to the

20   attorneys, what advice they received back, and whether or not

21   they followed that advice.  There's a fair amount of discovery

22   that that would entail in many circumstances, and so we would

23   ask for that sufficiently in advance of trial.

24            **THE COURT:**  What is the defense position?

25            **MR. JONES:**  Your Honor, as indicated in our

1   opposition, we don't anticipate presenting an advice of counsel

2   defense.  However, we do believe the fact that attorneys were

3   consulted would be relevant to the mental state as to

4   specifically whether or not there was an intent to defraud

5   under the statute.

6       I don't think that presenting that evidence or saying that

7   the fact of consulting an attorney is irrelevant to determining

8   whether the mens rea is obtained here would involve necessarily

9   a waiver of privilege.

10      Specifically, the counsel that I think is most prominent

11  at least with regard to Ms. Budhu is one in which we received

12  discovery from the Government regarding the interactions with

13  attorney Dolkart, what was provided to him, what was -- what

14  was received back.  So I'm not sure what additional information

15  the Government believes they would need to -- need to obtain in

16  that regard.

17      So our position would be that there would not be

18  additional discovery that was required based on the fact that

19  there is no advice-of-counsel defense and that it would simply

20  be relevant to the fact that an attorney was consulted.

21          **THE COURT:**  Well, assume for the moment that there was

22  such a defense in whole or in part.  What is the basis for the

23  Government's right to discovery?

24          **MR. ARNZEN:**  Your Honor, in order to determine whether

25  that defense is appropriate, the Court needs to determine and

1  the parties would in all likelihood litigate whether it's

2  appropriate.

3      In other words, if the defense gets to stand there and

4  say, "Hey, there was an attorney here that I checked in with"

5  or "The attorney blessed this plan.  The attorney gave me this

6  plan," in order to probe that, the Government -- the Government

7  should have discovery that illuminates whether that's true or

8  not, whether or not the attorney was consulted.

9      Just because a name on the top of a letterhead belongs to

10 an attorney doesn't mean that we know what communications were

11 made to the attorney and what advice was given back.  It's a

12 prerequisite to the jury instruction to determine that and

13 whether the jury instruction is appropriate.

14     And we need to be -- the United States would be -- needs

15 to be able to challenge that through witnesses or other

16 documents in evidence.

17         **THE COURT:**  Well, what is the legal authority for your

18 discovering that?  I don't know what authority you would be

19 relying on.  Look at Rule 16, which talks about discovery.

20     I agree with you that it would be very good for the

21 Government to have that, but I don't think you are entitled to

22 it in general.

23         **MR. ARNZEN:**  Your Honor, I don't see it specifically

24 spelled out in Rule 16 at the moment.

25     I do have a case, though, that we cited in our brief,

1    *United States v. Munoz*, 233 F.3d, 1117.  And it states to

2    qualify for an advice-of-counsel instruction, a defendant must

3    demonstrate that he fully disclosed to his attorney all

4    material facts and relied in good faith on the attorney's

5    recommended course of conduct.

6         **THE COURT:**  That is a correct statement of the law,

7    but does that case deal with the Government's right to

8    discovery?

9         **MR. ARNZEN:**  Good question, Your Honor.  I'm not sure.

10   I -- I thought it was commonplace and -- and an assumption that

11   I probably should not have relied on, but I've heard it since

12   law school.

13        If you're going to rely on an advice-of-counsel defense,

14   you need to waive your privilege.  In other words, they're

15   waiving their privilege by virtue of putting it before the

16   Court to the jury by saying, "I got this communication or that

17   communication from a lawyer."  That in and of itself waives the

18   privilege.

19        **THE COURT:**  That is a separate issue.  You would

20   certainly be able to delve into this on cross-examination, but

21   how would you support your request for pretrial discovery?  I

22   don't think you have a right to it, and Rule 16 does not

23   include it as a method of discovery.  The Government's right to

24   discovery are -- is covered by Rules 16 and 12, and they are

25   very limited.

1       So you might be able to get behind the privilege by

2   cross-examining, but I don't think you are entitled to pretrial

3   discovery unless they are offering specific documents.

4       And I will require that the defense provide to the

5   Government all the evidence that they are using in their

6   case-in-chief.  It must be premarked and disclosed to the

7   Government -- that is, the documents and physical evidence they

8   are using in their defense case-in-chief -- and the Government

9   has to do this three weeks before the trial.  I think that is

10  an appropriate date for the defense.

11      So if they are offering a letter to or from the lawyer or

12  a memorandum, something in the form of a document, you would be

13  entitled to that.  But otherwise, I don't think you are

14  entitled to just general discovery.

15      Do you have anything else to offer in that regard?

16      **MR. ARNZEN:**  No, Your Honor, and you actually covered

17  my third category already, which was items that the defense

18  intends to use at trial.

19      **THE COURT:**  I think at the same time the Government

20  discloses under my order of May the 15th, you would also

21  disclose that.

22      Any difficulty with that?

23      **MR. JONES:**  Your Honor, we can certainly provide

24  anything we anticipate at that time.  My concern is in my

25  experience -- and this is once I receive the Government's, our

1  lists may change, but we can provide any amendments within a

2  week of receiving the Government's exhibits.

3          **THE COURT:**  All right.

4          **MR. NURIK:**  With also, Your Honor, the proviso that I

5  think is borne out of the experience of trying cases is that

6  something may come up in the midst of the Government's case

7  that may compel us to use a document that we have not either

8  found up until that point or had realized its significance.

9      So short of something that we discover in good faith that

10  now we have to use, anything that we anticipate using at this

11  point in time, we certainly will disclose.

12          **THE COURT:**  Well, I think I expect the lawyers to act

13  in good faith.  And if something comes up that you did not

14  anticipate, you, of course, have to disclose it right away.

15  All right?

16          **MR. NURIK:**  Yes, sir.

17          **THE COURT:**  Let's talk about severance.

18      Is there any other part of the Government's motion for

19  reciprocal discovery that I failed to reach?

20          **MR. ARNZEN:**  No, Your Honor.

21          **THE COURT:**  Also, the Government from time to time

22  wants the statements of the witnesses.  That is governed by

23  Rule 26.2, and the defense has to comply with that rule, of

24  course.

25          **MR. ARNZEN:**  Exactly, Your Honor, and I expected to

1  kind of address that on a witness-by-witness basis during the

2  course of trial, as the way that our experience usually goes.

3  You're absolutely right.  We are entitled to those, and we

4  would request them.

5      **THE COURT:**  All right.  The defense has to comply with

6  that rule.

7      All right.  Let's talk about severance.

8      **MR. JONES:**  Your Honor, we are moving to sever

9  Ms. Budhu's trial from Mr. Hackett's based primarily on two

10  categories of information, some of which are the subject of

11  other motions in limine.

12      First of all, Mr. Hackett made a detailed proffer

13  statement to the Government.  I -- and based on the kind of

14  extensive exceptions that allow the Government to introduce

15  that evidence during the course of their case-in-chief or

16  rebuttal, I strongly anticipate that those statements will be

17  coming into evidence.

18      Should Mr. Hackett elect to assert his right not to

19  testify, it would constitute a confrontation clause violation.

20  I know that the Government has proffered potential redactions

21  that it would attempt to use, but I don't think --

22      **THE COURT:**  They are limited to four statements.

23      **MR. JONES:**  They -- that's correct.  There are four

24  statements that would -- that would reference Ms. Budhu by

25  name.  I would anticipate they would introduce substantially

1  more statements from that proffer, but those statements would

2  not include Ms. Budhu's name, though I do think they would

3  provide additional incriminating information regarding

4  Ms. Budhu.

5       And I don't think that the redactions offered by the

6  Government would be sufficient to cure the prejudice in this

7  case specifically because, one, the case has now been narrowed

8  down to two defendants.  Any of the other potential people that

9  could be referenced in that are going to be testifying

10  witnesses on behalf of the Government.

11       And while the Supreme Court has held that, you know,

12  they're not going to find a *Bruton* violation where there are

13  extensive inferences and references to other evidence required

14  in order to incriminate the defendant, they've also held that

15  the mere fact of replacing a person's name is not sufficient.

16       So the real question is the extent of the inference that

17  the jury would have to draw, and here I think we would be

18  kidding ourselves if we thought that the 12 jurors were not

19  able to infer from these statements that Ms. Budhu is the

20  person who was being referred to in the statements that the

21  Government elects to introduce.

22       I think --

23            **THE COURT:**  Well, I'm not sure -- sure about that.

24  Let's deal with them on a statement-by-statement basis.  They

25  are at Page 7 and 8 of the Government's brief.  So let's talk

 1    about the content of this to start.

 2         Who is going to speak for the Government?

 3              **MR. ARNZEN:**  I am, Your Honor.

 4         **THE COURT:**  So how do you envision this coming up at

 5    the trial?

 6              **MR. ARNZEN:**   That is one of our main points,

 7    Your Honor.  It doesn't necessarily come in at trial at all.

 8    If it does, it would be under the circumstances described in

 9    our motion to admit statements made by Mr. Hackett to the FBI

10    last year, and Your Honor would certainly hear that outside the

11    presence of the jury.  It's not something that we would spring

12    on the Court, the jury, or the defense.

13         So if there is an argument or a statement or evidence

14    presented by the defense that contradicts one of the factual

15    statements -- and simple factual statements is what we're after

16    here -- that was made by Mr. Hackett, then we would, through

17    our FBI witness, elicit testimony about the statements made by

18    Mr. Hackett in July 2018.

19              **THE COURT:**  Let me ask you one question about that.

20         It seems to me that these can come up in your

21    case-in-chief in one of two ways, one, that the attorney for

22    Mr. Hackett raises something contradictory in his opening

23    statement.

24         The other way would be the attorney for Mr. Hackett to ask

25    questions on cross-examination or trying to impeach a witness

 1   that the Government calls by taking a contradictory position to

 2   what Mr. Hackett said in his proffer.

 3       Do you envision this coming up in any other way in your

 4   case-in-chief?

 5           **MR. ARNZEN:**  I think that accurately describes our --

 6   how it would come in through the case-in-chief, setting aside

 7   for the moment if Mr. Hackett testifies in the defense.

 8           **THE COURT:**  Well, if Mr. Hackett testifies and you are

 9   cross-examining him, there would not be a *Bruton* problem.

10           **MR. ARNZEN:**  We agree.

11           **THE COURT:**  Do you agree with that, Mr. Jones?

12           **MR. JONES:**  Yes, Your Honor.

13           **THE COURT:**  So I think that this all boils down to

14   what Mr. Nurik will do.

15           **MR. ARNZEN:**  That may well be the case, Your Honor.

16           **THE COURT:**  All right.  Mr. Nurik, do you intend on

17   raising anything in your opening statement that could be

18   contradicted by Mr. Hackett's proffer?

19           **MR. NURIK:**  To use a dated analogy, that's the

20   64,000-dollar question.  It's very hard to determine that.

21   This is not a black-and-white situation where a drug deal

22   occurred or a robbery occurred.  These matters turn on intent,

23   and as a result, the difficulty -- the extreme difficulty in

24   this situation is trying to determine what opens the door and

25   what doesn't.

1          Now, I think everybody would agree that if I was unable to

2     raise any defense, given the vague nature of the so-called

3     waiver, that it would be constitutionally impermissible.  I

4     think that the Court would recognize that, but what I'm trying

5     to do is come to grips with what I can -- can say and can't

6     say.

7          So, for example, my client does not make a confession in

8     his proffer statement.  There's certain things that he talks

9     about in specific terms, mostly in general terms.  I know it is

10    not a taped proffer.  It is the agent's notes of what appears

11    to be a long conversation.

12         So do I intend on -- in getting up and claiming that my

13    client has no -- did not have the intent to commit the crime?

14    Of course.  If I wasn't able to do that, then I would be denied

15    the essential nature of my defense.  Am I going to be talking

16    about specifics?  I generally don't go into too much specifics

17    on opening.

18         I'm trying to figure out what is contradictory and what

19    isn't.  Clearly, I'm going to stay away from anything that

20    absolutely contradicts something my client says, but I am going

21    to make arguments about intent.

22         And if the Government's position is now that by making

23    arguments about intent, I have opened the door to the proffer,

24    then I would submit most respectfully to the Court that my

25    client's right to present a defense has been constitutionally

1  impaired.

2          **THE COURT:**  Do you want to reply to that?

3          **MR. ARNZEN:**  It's certainly not our position that if

4  Mr. Nurik makes a general-intent argument or lack-of-intent

5  argument, that would mean we can bring forth and put before the

6  jury the proper statements.

7          We have -- we do have the right and we intend to -- if

8  there's a factual issue that is clearly stated by Mr. Hackett

9  that was -- that was clearly stated by Mr. Hackett during the

10  proffer and there's something contradictory to a factual

11  statement about either a state of affairs or his belief at the

12  time about what was going on in the scheme, then we should be

13  able to bring in the three -- the FBI statements.

14          Short of that, though, a generalized intent argument, in

15  our view, does not trigger our right to use the statements.

16          **THE COURT:**  Well, something you said -- well, let me

17  make two comments.

18          First of all, Mr. Nurik, you are not prohibited from

19  making any lawful argument, and the -- the question will be

20  whether the Government can use the proffer.  But you are not

21  proscribed from making an argument or offering evidence that

22  the Government thinks is contradicted by the proffer.

23          The question will be:  If you make certain arguments, what

24  is the Government entitled to do in response?  And that would

25  depend on the argument you make.  The Court cannot rule on that

1   without seeing the exact argument you intend to make.

2      Secondly, the Government attorney raises a requirement

3   that I wholeheartedly agree with.  That is that before the

4   Government uses any statements from the proffer, they have to

5   first raise it with the Court so the Court can rule on it.  And

6   I appreciate the Government raising that, and that is the

7   practice of the Court in general.

8      So I don't know how we can rule on the four examples

9   because, for one, we don't know what Mr. Hackett's attorney

10   will do and how this will narrowly be used in response.  But I

11   can give you some guidance if you would like, looking at the

12   four examples.

13         **MR. ARNZEN:**  Very well, Your Honor.

14         **THE COURT:**  Do you want to add anything?

15         **MR. NURIK:**  No.  Thank you, Your Honor.

16         **THE COURT:**  All right.  Let's go to Statement No. 1.

17      I'm not sure what you are saying here.  Is this Budhu

18   speaking or Hackett speaking as to what Budhu said to him?

19         **MR. ARNZEN:**  Your Honor, these are what Mr. Hackett

20   said to the FBI, not verbatim but as recorded in summary style

21   by the FBI agent who was present.  So these are statements by

22   Hackett.  Mr. Hackett talked about a lot of subjects, only a

23   few of which concerned Ms. Budhu directly.  These are the four

24   examples that we chose that -- in which he referred to

25   Ms. Budhu.

 1          Other statements about Ms. Budhu are -- we don't think

 2     we'd argue for their admission.  These are the only four that

 3     directly reference Ms. Budhu in the FBI 302 report that we

 4     would seek to put before the jury under the circumstances we

 5     described.

 6          THE COURT:  I understand that, but Statement No. 1

 7     makes no sense.  It is saying that Mr. Hackett says Budhu told

 8     him why he was -- Hackett -- was putting up the money.  That

 9     makes no sense why Budhu would tell Hackett why Hackett was

10     doing something.  Hackett would know.

11          Do you see the problem?

12          MR. ARNZEN:  I do, Your Honor, without a whole lot of

13     context, which I happen to have.  Ms. Budhu, the evidence will

14     show, reached out to try to find somebody to promote, to pump,

15     the stock.  She found Mr. Hackett.

16          Mr. Hackett says, "What will I get in return?"

17          Ms. Budhu, according to the statement, said, "Well, you

18     put in $300,000 into the company, and for that, you will get

19     750,000 shares of ASNT stock."  And she indicated the price as

20     well.

21          THE COURT:  I would have to look at the full record to

22     know whether there would be the inescapable conclusion that

23     Budhu made this statement.

24          MR. JONES:  Well, Your Honor, one thing that I would

25     note is I anticipate that this is going to be a significant

1    issue in the trial.

2        If the Government is going to open and close on their

3    contention that Ms. Budhu intentionally reached out to

4    Mr. Hackett in order to set up a pump-and-dump scheme that she

5    was looking for -- and we're contesting that -- and then this

6    statement comes in because of some -- an argument that Mr.

7    Nurik makes, I think it's going to be crystal-clear that we're

8    talking about Ms. Budhu because that's who the Government is

9    going to allege -- or talk -- that's who the Government is

10   going to allege was making this contact with Mr. Hackett.

11       It was only going to be two -- at least to my knowledge --

12   and the Government can correct me if I'm wrong -- there was

13   only going to be two representatives of ASNT that are at all

14   relevant to this charge or this case, and that's Mr. Gillespie

15   and Ms. Budhu.

16       And Mr. Gillespie is going to testify on behalf of the

17   Government.  So it will be clear that he's not the individual

18   that's being referred to.

19           **THE COURT:**  It all boils down to what the Government

20   would be entitled to do under the *Bruton* and *Richardson* cases

21   at the time of trial.

22       Now, is there any other basis or ground for your motion to

23   sever?

24           **MR. JONES:**  Yes, Your Honor.  There's one additional,

25   which is related to other motions in limine.

1          Specifically, there's a substantial amount of 404(b)

2     evidence that the Government intends to introduce that would

3     solely be relevant to Mr. Hackett's case regarding other call

4     rooms that he's been involved in, other deals that he's

5     allegedly been involved in, none of which, to my knowledge, is

6     any allegation that Ms. Budhu was aware of or involved in.

7          So those -- that evidence will provide additional

8     prejudice to Ms. Budhu by a mere-guilt-by-association problem.

9     I think when that's combined with the *Bruton* problem, it

10    creates an additional risk that Ms. Budhu would not receive a

11    fair trial if the defendants were tried jointly.

12          **THE COURT:**  Response?

13          **MR. ARNZEN:**  Your Honor, there -- there are some deals

14    that we seek to present before the jury that Mr. Hackett and

15    only Mr. Hackett had involvement with.  It will show his

16    knowledge of how call rooms, boiler rooms, actually worked.

17          There's a limiting instruction that's already in the

18    pattern jury instructions that will fully address that.

19    That -- that -- that evidence will only go toward whether

20    Mr. Hackett is liable -- or is guilty or not, and the

21    instruction can clearly state that Ms. Budhu should stay out of

22    harm's way as it concerns that evidence.

23          **THE COURT:**  Any reply?

24          **MR. JONES:**  Your Honor, the issue is that at some

25    point, you reach a critical mass of evidence that's being

1   introduced that's relevant only to Mr. Hackett but that

2   substantially, with regard to the *Bruton*, incriminates

3   Ms. Budhu and with regard to his alleged involvement in these

4   other schemes -- that there is overlap.

5       And the Government is making these arguments that

6   Ms. Budhu is seeking out Mr. Hackett as a result of his

7   supposed involvement in these types of pump-and-dump schemes.

8   If the Government is making that type -- type of argument,

9   that's inviting the jury to think, "Oh, well, we know from the

10  other evidence that Mr. Hackett is allegedly involved in all of

11  these other schemes.  Thus, it makes it more credible that

12  Ms. Budhu was reaching out to him for that purpose."

13      So as we pile on this additional evidence that's only

14  relevant to Mr. Hackett, it significantly increases the

15  prejudice to Ms. Budhu.  And I think at that point, it reaches

16  a level where her right to a fair trial is implicated.

17      **THE COURT:**  I cannot see that as a problem on the

18  record before me now, but if at the trial you perceive that,

19  you can renew your motion.

20      Right now, I agree with the Government that this can be

21  treated by a limiting instruction and one that will go to the

22  jury in a final instruction reminding them that they can only

23  consider this evidence as to Mr. Hackett.

24      So as to the *Bruton* problem, the Government is seeking a

25  joint trial.  So the remedy would be excluding any statements

that would contravene the holding in *Bruton* and *Richardson* and

the cases clarifying those decisions, and I think that that

would be tailored if and only if the Government seeks to

introduce them.  They may not introduce them at all or seek to

do that.

So I don't think that there is a risk of unfair prejudice

to your client because the Court maintains discretion to keep

the statements out or tailor them so they comply with the

decision in *Richardson*.  So I'm going to deny your motion to

sever without prejudice.  You are free to bring it up again

pretrial or during the trial.

All right.  Now, this brings me to another topic, and then

we'll take a recess and try to make some headway as to the

404(b) issue, and hopefully I will have the proper

understanding of what the Government is seeking to do.

So it's obvious that I have a speech impairment, and this

is a product of a very rare neurological disorder that I have

that affects my ability to walk and my ability to talk.

Now, I have dealt with this.  I've done it in several

ways, and I mention this to you because I've taken the position

that no one should be prejudiced even to the slightest degree

in a trial because of my speech impairment.

One -- I have in the past tried cases where I let the

jurors know if I say anything, one, they will see it on the

screen as you do.  The court reporters are very adept in

understanding me.  We have an agreement that if they don't
understand me, they say so, and I repeat it.  And if they still
don't understand me, I type it out on my computer, and the
computer speaks it for me.

I have a program that speaks.  You may have heard it with
the sentencing that I did prior to this case, and I have a lot
of routine things I say in the computer to utilize in a trial.
The other way is on the screen, and the third way is I write it
out in advance and have the clerk read it for me.  And if it is
an instruction, I give a copy to each juror also.

So, for example, with a limiting instruction, we would
write them out in advance, and I would give them to the jury by
having the clerk read it to them, and they would also have
their own personal copy.  I think it is actually better than if
I did not have the impairment and I just spoke it to the
jurors.  This way, they hear it, and they see it, and they have
it.

And so that is how I deal with this condition, but if
anyone has a doubt or a concern, I would have the case assigned
to another judge, and I'm frankly thinking of that anyway
because having to respond the way I mentioned would slow the
trial down.

But I ask for your comments on this, and don't be afraid.
I've assigned other cases to other judges.  This system I told
you about works well with routine cases, but this is not a

1   routine case.  Do you have any comments?

2       The other thing I can do is -- and I did this in another

3   case.  Once, the Government in another case asked me to

4   reassign it, and I agreed.  And in another case, I had the

5   parties say it to the clerk in writing and set a date whether

6   they want to reassign it, and the clerk did not tell me what

7   party requested reassignment.  And if anyone does, I would do

8   so and not know who.

9       It is a fact of my life (Inaudible).

10  (Court reporter requests clarification for the record.)

11      THE COURT:  It is a fact of my life, and I just deal

12  with it.

13      MR. NURIK:  Well, Your Honor, I have to confess that I

14  have not given this a lot of thought about the opportunity to

15  change, and I'm not sure I'm in a position, in having not

16  conferred with my client, to make that decision right now.

17      I would not hesitate to ask you.  I don't -- I don't feel

18  the need for a blind, so to speak, request.  Obviously, this is

19  a great sacrifice on your part, and I'm thankful that you're

20  doing this.  You and I are the same age, and I couldn't even

21  imagine --

22      THE COURT:  You look a lot younger.

23                  (Laughter)

24      MR. NURIK:  Well, I don't feel it sometimes.

25      But in any event, I would like the opportunity to maybe

1   think about this for 24 hours or 48 hours, but I do have a

2   question -- two questions actually.

3           **THE COURT:**  All right.

4           **MR. NURIK:**  One is if the case is reassigned, how does

5   that process work?  Do you specifically assign it to another

6   judge that might be available, or does it go back to the random

7   assignment wheel or whatever is done in this district?

8           **THE COURT:**  That is a very good question, and I

9   would -- at this point, I would send out an e-mail to the other

10  judges saying, "This is the type of case.  This is how long it

11  will take.  Can anyone try it?"  That is the usual way it is

12  done, especially when the judge has multiple cases or a

13  conflict in the schedule.

14      The other way -- if it is continued beyond the 28th, I

15  would have the clerk just place it back in the draw for random

16  assignment.

17          **MR. NURIK:**  And I guess the second question,

18  Your Honor, if I may be so bold, is to ask --

19          **THE COURT:**  Go ahead.

20          **MR. NURIK:**  Okay.

21      -- is I'm only concerned that this might put an undue

22  strain on you.  I would imagine this trial -- the Government

23  has estimated two to three weeks.  Given what you've explained,

24  that might take four to five weeks or at least four weeks.

25      And so if the Court is willing to go forward with this

1    trial, then, you know, that would be a consideration that we

2    would discuss.  I just wanted to know that this Court is

3    prepared for what might be a bit of an ordeal.

4         **THE COURT:**  I don't think that is a problem.  I

5    usually work until late hours every day anyways.  So that would

6    not be a problem.  I'm slower than other judges, and that is

7    because I'm trying to be a thorough and detail-oriented person,

8    but I don't think it would take that long.

9         Maybe I would add a few days, but the -- where I would

10   have a concern is only in response to things that happen during

11   testimony where I would have to give a quick limiting

12   instruction to the jury or I would have to type it out on my

13   computer and then have the computer speak it to the jury.

14        By the way, I have an instruction that I tell the jury all

15   about this in advance, but it is the elephant in the room, and

16   we might as well discuss it.

17        **MR. NURIK:**  Thank you, Your Honor.

18        May I -- may I have 24 hours to discuss this with my

19   client?

20        **THE COURT:**  You can have even more than that.

21        **MR. NURIK:**  Thank you.

22        **THE COURT:**  Mr. Jones, you are very familiar.  You

23   tried a case before me, but I think you will notice that my

24   speech has gotten somewhat worse since the *Cano* case.

25        **MR. JONES:**  That's correct, Your Honor.  We actually

1    tried that one twice in here, but I think that was also before

2    the monitors, or at least the first one was.

3              THE COURT:  Right.

4         MR. JONES:  My concern doesn't necessarily really have

5    anything to do with fairness, but it's the same thing with

6    time.  It's already going to be a lengthy trial, and my concern

7    would be with juror patience and frustration in terms of

8    listening to a lot of evidence.

9         And the fact that -- as the Court mentioned, that it's not

10   a routine case, I would anticipate that I would have more

11   non-routine objections or things that I would request,

12   potentially a sidebar, in a case like this than I would in a

13   border bust or in, you know, an illegal reentry case.

14        So I think -- the thing that I think would be important

15   for me to make the decision with my client is to get, like, a

16   pretty realistic idea of how long we think it's going to take.

17   Does the -- if I can ask, when the Court conducts trials now,

18   do you conduct full, like, 9:00-to-5:00 trial days, or how does

19   the Court typically --

20             THE COURT:  Usually from 9:30 to 4:30 with the jury,

21   and I would go five days a week.  So I would eliminate my

22   calendars and concentrate only on the case.  Hopefully, that

23   answers your question, but hope -- let's talk about how long

24   the trial will be.

25             MR. ARNZEN:  Your Honor, we've given that a lot of

1    thought, and we think it would usually take in a -- different

2    courtrooms in this building take different lengths of time.  We

3    pick Judge Hayes because we recently had a trial before Judge

4    Hayes -- right? -- that had about the same level of detail and

5    the same complexity, and a two-week estimate is what we came up

6    with in Judge Hayes's courtroom, just for example.

7         This Court is known to be detail-oriented.  We expect it

8    to take probably three weeks in here with -- especially with

9    capable defense counsel that spots issues.  And so that's our

10   rough estimate right now.  We're working on ways to tighten up

11   our case, but we always do that, not because of Your Honor but

12   because of presentation to the jury.

13        **THE COURT:**  So if the Government estimates three

14   weeks, that is 15 days.  I would add two or three days to that,

15   depending on the issues involved.

16        **MR. JONES:**  And I'm presuming that the Government's

17   estimate does not -- is not anticipating any defense case.

18        **MR. ARNZEN:**  Or a very brief one.

19        **THE COURT:**  What do you think, Mr. Jones and Mr.

20   Nurik, about the length of the trial?

21        **MR. NURIK:**  Well, Your Honor, it seems that if it's

22   roughly three weeks and maybe a few days more plus a -- maybe

23   if there is a defense case, if it goes much longer than that, I

24   guess we could -- we could run into Thanksgiving week.  That's

25   my only concern.  I don't know.

1    What -- if we did, what would be the Court's practice in

2    terms of schedule during the Thanksgiving week?

3        **THE COURT:**  I sit on Monday, Tuesday, and half of

4    Wednesday, but that may eliminate some of the jurors with

5    travel plans.  I do not sit on Thanksgiving or the Friday

6    afterwards.

7        Also, I'm unavailable for two days in the middle of

8    November.  I'm sitting on the Court of Appeals, and we have the

9    Veterans Day also.

10       **MR. JONES:**  The other concern from Ms. Budhu's

11   perspective is she lives -- she lives in New York.  She does

12   not presently have -- have income.  So residing in San Diego

13   for a really extended period of time is going to be difficult

14   for her.

15       **THE COURT:**  Isn't she entitled to the Marshals paying

16   for her lodging and subsistence during the trial?

17       **MR. JONES:**  She's in a unique position because we

18   are -- the magistrate only appointed the Federal Defender to

19   represent her subject to potential repayment because she does

20   own a property that has substantial value.

21       And in my experience dealing with the Marshals, the

22   Marshals will pay for transportation here.  They will not pay

23   for lodging once she is here.  And she has family that can help

24   her, and, you know, we can make it work.  It's just we don't

25   want to extend it for -- for longer than necessary.

 1          **THE COURT:**  Understood.

 2       So the consensus is that you would like to have another --

 3       (Court reporter requests clarification for the record.)

 4          **THE COURT:**  Was there a consensus that you would like

 5    me to have the case assigned to another judge?

 6          **MR. JONES:**  I would like the same time as Mr. Nurik to

 7    discuss it a little bit further with my client with regard

 8    to -- especially considering the housing situation.  I don't

 9    think we would need long to make that decision, but I would

10    like a little more time to speak with her about it.

11          **THE COURT:**  All right.

12          **MR. GALVIN:**  Your Honor, we appreciate the -- the

13    offer to weigh in on this.  We would also like just 24 hours to

14    go back and discuss at our office to decide whether we think

15    our case at all might be prejudiced by the issue.

16       We would just ask if the Court could clarify the

17    procedure.  If we do decide that there is an issue that we'd

18    like it transferred -- how we would go about making that known

19    to the Clerk's Office if we were to arrive at that point.

20          **THE COURT:**  I would take care of that.  You wouldn't

21    have to take care of that.

22          **MR. GALVIN:**  Well, in terms of expressing whether we

23    wanted another judge to take it.  I know that Your Honor

24    mentioned that -- in prior cases that you gave the option for

25    the parties to express that preference anonymously through the

1   Clerk's Office rather than directly to the Court.

2       If that's the way the Court would do it, we would just --

3   would the Court just prefer us to make that known to the

4   Clerk's Office, or what would the procedure be?

5           THE COURT:  Well, why don't you do this.  And I

6   guarantee you, you wouldn't hurt my feelings either way.  You

7   should not worry about that.  I'm more worried about your

8   concern that your client receive a fair trial, whether it is

9   the Government or Mr. Hackett or Ms. Budhu.

10      And so why don't you specify to the clerk by Friday, if

11  that gives you enough time, and you can file it with the clerk

12  under seal, and he will only notify me whether any party

13  requested assignment -- reassignment and not tell me who or

14  whether no party requested reassignment.

15          MR. GALVIN:  Thank you, Your Honor.

16          THE COURT:  And you can file that with the clerk and

17  let him know.

18      Rick, do you have any other suggestions on that procedure?

19  I think we only used it one time before.

20          THE CLERK:  The last time, Your Honor, counsel just

21  e-mailed me to let me know.

22          THE COURT:  All right.

23          MR. GALVIN:  We have no objection to that, Your Honor.

24          MR. NURIK:  No objection, Your Honor.

25          THE COURT:  And think about the issues that would come

up during the case and how that would impact the rights of your clients; that is, my speech impairment.

All right.  So with that, we'll call it a day and set the next hearing.

I would like to see the Government's actual words on the statements that you want to offer as 404(b).  I know you're contending that it is not 404(b) because they were referenced during the transaction involved in this case, but I need to know more about them.

What are the exact statements, and what would be the exact evidence that you would offer as to each individual other transactions?

MR. ARNZEN:  Very well, Your Honor.

As far as timing goes, we're having those transcribed right now.  We think the transcripts will be finished next week, and so that might facilitate an analysis, our ability to give them to the Court and provide them to the defense, so any time after that.

THE COURT:  I think I or any other judge would need it to make a decision.

MR. ARNZEN:  Understood, Your Honor.

THE COURT:  All right.  So you will complete that next week?

MR. ARNZEN:  We believe so.  They are in process, Your Honor.  So our goal is next week -- middle of next week.

1        **THE COURT:**  All right.  And can you distribute them?

2        **MR. ARNZEN:**  Yes, Your Honor.

3        **THE COURT:**  So what should be our next date?

4        **MR. ARNZEN:**  Well, just to kind of game it out,

5   Your Honor, I think once we have it, we'll review it very

6   quickly.  We'll produce it to the defense.  I think we'd need a

7   week to prepare papers and then given enough time for a

8   response by the defense to tee it up for a motion hearing

9   before the Court.

10       **THE COURT:**  Rick, what about the week of the 21st?

11       **THE CLERK:**  We currently have a 1326 jury trial set

12  for the 22nd.  We do not have calendar, with the exception of

13  possibly a continuance of that trial, on the 23rd.  The 24th is

14  a full calendar.

15       **THE COURT:**  What about the 23rd?

16       **THE CLERK:**  The 23rd?  Currently, there is nothing

17  set, but I do anticipate the second day of that jury trial.

18  The 21st, at 2:00 p.m., we have the pretrial conference for

19  that trial, possibly following that.

20       **MR. JONES:**  Your Honor, I would just note that if

21  ruling on some of these issues is going to be deferred that

22  long, that would substantially influence whether we believe

23  we'd be prepared to go forward a week later on the 28th with

24  regard to the 404(b) ruling.

25       So if that is going to be the plan going forward, we would

1   request at that point to vacate the trial date.

2        **THE COURT:**  Well, what about the -- would you all be

3   available on the first Monday in October?  I think that is the

4   7th.

5        **MR. NURIK:**  Yes, Your Honor.

6        **MR. JONES:**  I would be available for that.

7        **MR. ARNZEN:**  The Government would, too, Your Honor.

8     I just wonder what the deadlines would be such that this

9   would be sufficiently -- and to give the parties and the Court

10  enough time to analyze it.  So that --

11       **THE COURT:**  All right.

12       **MR. ARNZEN:**  That seems particularly fast.

13       **THE COURT:**  What do you propose?  You'll have the

14  material out late next week, late next week?

15       **MR. ARNZEN:**  We can turn -- we can turn the materials

16  over to the defense by Wednesday, Your Honor, and, if it helps,

17  submit it to the Court as well that day.

18       **THE COURT:**  What I would need is the exact statements

19  and what you are offering in response to that statement.  In

20  other words, what would you offer about the individual

21  investment or program that was referenced in the statement?

22       **MR. ARNZEN:**  Oh.  I understand.

23     So if it's about, for example -- I think I understand.

24  One of the deals that falls under a disputed category of 404(b)

25  or not 404(b) is QBIO.

1       So we would provide the Court with not only the taped

2  statement that we intend to offer but also what other evidence

3  we intend to elicit about QBIO such that Your Honor can analyze

4  whether, in total, this falls into a 404(b) category or not and

5  if it should be admissible thereunder.

6       **THE COURT:**  Precisely.  And if I decide that this will

7  come in, I need to decide also under Rule 403 how much is let

8  in.

9       **MR. ARNZEN:**  Understood, Your Honor.

10      I think we can submit all of that by -- well, I hate to do

11 it in tiers.  My first -- I think the more complicated analysis

12 and the more volume concerns the transcripts themselves.

13      So if we turn -- turn those over to the defense Wednesday

14 and then by Thursday decide what evidence dovetails with that

15 or kind of illuminates that, I can tell Your Honor at the

16 outset we imagine that this will all be elicited through

17 testimony from our key cooperator, Michael Forster.

18      We do not intend to spend a lot of time on it.  We think

19 it would just distract from the main events at trial.  But if

20 there's a statement about QBIO, we would ask Mr. Forster on the

21 witness stand, "What does QBIO refer to?"

22      He would not say, "A pump-and-dump scheme."  He would

23 merely say, "That was another deal that I was involved with

24 that involved both a limited number of shares of stock.  At the

25 same time, a promotion was going on.  That caused problems.  So

1  I wanted to deal with those problems that might come up in

2  ASNT."  It would be as simple as that, Your Honor.

3       So we would -- we would work on what we anticipate the

4  questions and the answers to be, and we -- we could provide

5  that to the defense and to the Court the following day,

6  Thursday.

7            THE COURT:  You're giving yourself a short time leash.

8            MR. ARNZEN:  I'm just trying to be prepared in advance

9  of an October 7th hearing, though, Your Honor.  The October 7th

10 hearing, I think, is the hard part because it's so close in

11 time.

12           THE COURT:  Well, let's hear what the defense will do

13 in response and how much time you need.

14           MR. NURIK:  Your Honor, I confess I'm confused because

15 my understanding of Rule 404(b) is you're seeking to introduce

16 similar acts, acts that are bad acts, acts that are other

17 fraudulent acts in this context.

18      Do I understand the Government to say that they're --

19 they're going to have the witness simply testify about benign

20 aspects of another deal to give context to what is in the

21 statement?  Because if that's the case, I'm not sure what we're

22 doing in -- in this process.

23      If they're claiming that this -- that these statements

24 themselves are inextricably intertwined and -- then that's one

25 thing.  If they're saying they're inextricably intertwined and

1   now we have to explain them in talking about these other deals,

2   that's another thing.  And if they're saying, "We're going to

3   talk about these other deals" and referencing them as

4   fraudulent deals by testimony by Mr. Forster as they are

5   fraudulent deals, that's a third thing.

6       That's be -- that would be what I typically -- we would

7   all typically call 404(b).  I'd just like to get a handle on

8   this.  Part of the problem in responding to all this is I don't

9   think the Government, with all due respect, has followed the

10  Court's instructions to date and given us any real detail of

11  what we're dealing.

12      So I think that's what the Court's asking for the

13  Government.  I -- I -- whenever I get it, I'll jump on it right

14  away to be ready for the October 7th hearing.  I'd just like to

15  know what it is I'm going to be getting.  Are we talking about

16  bad acts?  Are we talking about just simply benign aspects of

17  another deal?

18      **MR. ARNZEN:**  They're not benign.  I will say that.

19  They are not benign.

20      So our position is twofold.  First, it's inextricably

21  intertwined.  But if the Court decides otherwise and it's

22  404(b), we want to have given proper notice and a chance for

23  the Court to weigh in on that.

24      So we're going to present it exactly like I described, we

25  hope.  And if they want to attack it in any way, shape, or

form, they can do so.  They've had time to investigate it.  We gave them notice months ago.  We gave them supplemental notice that basically described what I just described for Your Honor in a letter last month.

And so that's our intent.  That's what they're dealing with.  If it's not 404(b) because it's some benign aspect of something, that's fine, and it doesn't even fall under the strictures of 404(b).  It should just come in if it's relevant to the ASNT deal.

**THE COURT:**  It depends on how much detail you are going to elicit from Mr. Foster -- Forster.  I think you understand what I'm saying.

If you just have a statement and a sentence or two, it is just for the context of what Mr. Hackett meant.  I don't think that is 404(b) evidence.  But on the other hand, if you are using this as an opening to put on Mr. Hackett's involvement in other transactions, that would be clearly 404(b).

But you are proposing to do exactly what I prefer; that is, present the actual statements and how you are going to elicit testimony or present evidence to explain it.  Your proposal that you suggested is precisely what I would want.

**MR. ARNZEN:**  Very well, Your Honor.

**THE COURT:**  So I think you are exactly on the right track.  Now, how the defense can respond to that is -- whether you can have your brief by the 7th may be a more difficult

1    issue.

2       So if you get that by the end of next week, how far would

3    you need to respond?  Would a week be good enough?

4          **MR. NURIK:**  Certainly, Your Honor.

5          **MR. JONES:**  Yes, that would be plenty of time,

6    Your Honor.

7          **THE COURT:**  So if the Government provides it by

8    October the 4th and the defense responds by October the 11th,

9    what if we have our hearing on the day suggested?

10      Rick, the 22nd?

11         **THE CLERK:**  The 22nd, we currently have a jury trial

12   and four sentencings set.  I --

13         **THE COURT:**  Well --

14         **THE CLERK:**  The 21st, the Monday, we have the -- only

15   the pretrial conference and motion in limine hearing, and

16   that's at 2:00 p.m.

17         **THE COURT:**  I would need this in advance.  So you can

18   e-mail them to me.

19         **THE CLERK:**  Yes, sir.

20         **THE COURT:**  All right.  So how's that?  We'll come

21   together at 2:00 o'clock on the 21st.

22         **MR. NURIK:**  Thank you, Your Honor.  That works.

23         **THE COURT:**  All right.  What does that do for your

24   trial preparation?  Do you need more time?

25         **MR. NURIK:**  I think it's inevitable that we're going

1    to be looking to push this case back, Your Honor.  I don't see

2    how we're not going to be able to do that.

3         Now, if the Court were to exclude all the Government's

4    requested information, that might be -- we might still be able

5    to keep the date.  On the other hand, if you let some of it in,

6    depending on what you let in, it may require us to provide and

7    investigate -- to have some rebuttal evidence.

8         Yes, the Government has told us about the names of these

9    tickers before, but they have never, as you -- as you have

10   asked them in the past, given us details as to what their

11   evidence is going to be, what it is precisely about these that

12   is the problem; that is, under 404(b), a prior similar bad act.

13        So we're not in the position until we get more information

14   to determine whether or not we have to address these

15   independently.  And, of course, we still have our arguments

16   before Your -- Your Honor that it may unduly delay the trial

17   and may be excludable under 403, but I'll leave that to the

18   hearing.

19        Nevertheless, I think, given all of these circumstances,

20   it seems wise to push this trial back.

21             THE COURT:  Well, I think we have 21 days after the

22   October 28th date under the Speedy Trial Act.

23        And if this will take three weeks, we would prescreen the

24   jury, especially given the holiday season, that some of the

25   jurors cannot serve two or three weeks.  They believe they only

1   have to serve a week, and you will -- for a two-week trial, you

2   will have a lot of jurors seeking to be excused because of

3   financial reasons.

4       So why don't we see what happens, and I think the trial on

5   the 28th is somewhat in jeopardy.  But if I'm going to try it

6   or another judge, they may or I may set it for a week later or

7   shortly thereafter.

8       So be prepared for a new trial date but close to the date

9   already set.  That is if you do not need more time to

10   investigate what I or another judge will allow in.

11          **MR. NURIK:**  Okay.

12          **THE COURT:**  All right.  So keep early November in --

13   available.

14       All right.  We'll see you on the 21st at 2:00 o'clock.

15       Are there any other issues raised in your motion that you

16   would like addressed today for trial preparation?

17         **MR. ARNZEN:**  We don't think any need to be addressed

18   today, Your Honor, from the Government's perspective.

19         **MR. JONES:**  Your Honor, we don't have any substantive

20   issues.

21       I did want to raise Ms. Budhu's request whether the Court

22   would consider allowing her to appear for the hearing on the

23   21st by telephone, which I know is a little bit complicated in

24   this courtroom.  But she has done it before, and we typically

25   just debrief afterwards to make sure she was up to date on

1    everything.

2        But if she's going to have to be out here for -- fly out

3    here for several weeks, it would be important for her to try to

4    conserve resources.

5            THE COURT:  Well, since we are setting a new trial

6    date on the 21st, I think she should be here.

7            MR. JONES:  Okay.  So I guess I wasn't clear that

8    we -- so on the 21st, we will be setting a new trial date?

9            THE COURT:  Unless I'm transferring the case.

10           MR. JONES:  I understand.

11       Okay.  Thank you, Your Honor.

12           THE COURT:  Can she appear by videoconference?

13           MR. JONES:  She certain -- she can.  She can appear by

14    video.

15           THE COURT:  If --

16           MR. JONES:  I haven't made arrangements for that

17    previously with the Court, but I can talk with Rick about it.

18           THE COURT:  All right.  We once had a witness testify

19    from Singapore by videoconference live, and so that may be a

20    way for her to appear and not have to travel.  But I would want

21    a written waiver request.  We're only talking about legal

22    issues, and we would not be taking testimony.

23           MR. JONES:  Yes, Your Honor.  We'll -- we'll file a

24    written request, and I'll discuss what's required for the

25    videoconference.  We've done that for several of our meetings.

1    So she's prepared for that.

2         **THE COURT:**  All right.  See if you can work that out

3    with the clerk if you would like that.

4        All right.  Anything else, Mr. Nurik?

5         **MR. NURIK:**  No.  Thank you, Your Honor.

6         **THE COURT:**  All right.  Mr. Galvin?

7         **MR. GALVIN:**  No, Your Honor.  Thank you.

8         **THE COURT:**  All right.  We'll see you on the 21st.

9        And I like the idea of your presentation.  You understand

10   what I would need.  It would be preferrable in one place, the

11   statement and then what you are offering in response.

12        **MR. ARNZEN:**  We will do that, Your Honor.

13        **THE COURT:**  Thank you very much.

14        **MR. ARNZEN:**  Thank you, Your Honor.

15        **MR. NURIK:**  Thank you, Your Honor.

16             (Proceedings adjourned at 1:15 p.m.)

17

18

19

20

21

22

23

24

25

1

2

3                         **CERTIFICATE OF REPORTER**

4          I certify that the foregoing is a correct transcript

5    from the record of proceedings in the above-entitled matter.

6

7    DATE:   Wednesday, December 11, 2019

8

9

10

11              _____/S/ James C. Pence-Aviles_____

12          James C. Pence-Aviles, RMR, CRR, CSR No. 13059
                        U.S. Court Reporter
13

14

15

16

17

18

19

20

21

22

23

24

25