FILED
JUL 05 2024
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY DEPUTY

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

UNITED STATES OF AMERICA, Plaintiff,

vs.

ANDREW HACKETT, Defendant.

Case No.: 3-18-cr-03072-TWR-1

**DEFENDANT'S MOTION FOR NEW TRIAL BASED ON NEWLY DISCOVERED EVIDENCE AND PROSECUTORIAL MISCONDUCT**

The defendant, Andrew Hackett, hereby submits this Motion for New Trial on the basis of newly discovered evidence and prosecutorial misconduct.

**I**

**INTRODUCTION**

In or around late February and early March of 2024, articles pertaining to a newly revealed to be "rogue" Federal Bureau of Investigations ("FBI") Confidential Human Source ("CHS") accused of entrapping the current President of the United States were published by the Washington Post[1], Associated Press[2], The Guardian[3], and other news outlets. These articles have identified the CHS in question to be Alexander Smirnov. Based on select relevant discovery turned over to the Defendant, the Defendant was able to recently make the connection that the alleged rogue FBI CHS Smirnov, discussed in the articles, may have been an individual by the name

[1] https://www.washingtonpost.com/politics/2024/03/09/alexander-smirnov-fbi-biden-impeachment/
[2] https://apnews.com/article/hunter-biden-fbi-informant-smirnov-ukraine-impeachment-113c1104052dbdc9302606f6d42c9939
[3] https://www.theguardian.com/us-news/2024/mar/14/company-paying-fbi-informant-trump-connections

7

"Alex (Last Name Unknown)" as identified in the discovery turned over to the defendant regarding a "similar act deal" known as "WRIT," which the Government exhaustively argued was "*intrinsic evidence of the crimes for which Defendants are charged*" in the present matter before the Court. (Dkt. 172, p.8:21-27).

The Alex identified in the defendant's discovery was recently confirmed to be CHS Smirnov by the Securities and Exchange Commission ("SEC") in their parallel civil case against the Defendant:

> "*...the SEC already confirmed during the May 14 [2024] hearing **its** understanding based on information provided by the **United States Attorney's Office** that Smirnov was the "Alex" on a recorded call provided to Hackett during criminal discovery; thus this issue is not in dispute*," (3:18-cv-01530, Dkt. 213, p. 7:16-19).

Mr. Smirnov's contacts with the defendant would have produced either recordings of their conversations, or reports and notes summarizing the conversations, trading reports pertaining to WRIT, trading reports authorizing CHS Smirnov to purchase or sell WRIT, all FBI reports pertaining to CHS Smirnov and brokerage reports and conversations with CHS Smirnov's broker/associate Denis, which were not produced to the defendant in discovery prior to trial.

In light of this revelation, Defendant, through his appellate counsel sought the relevant CHS Smirnov discovery from the United States Attorney's Office. However, in response to Defendant's appellate attorney's request for discovery, Assistant United States Attorney ("AUSA") Janaki Chopra declined to produce further discovery, despite the SEC confirming that the US Attorney's Office is aware of CHS Smirnov's identity and his relationship to this matter before the Court.

Defendant would be entitled to recordings, reports, or notes even now if they are potentially exculpatory, and he would have been entitled to recordings, including the aforementioned evidence obtained by CHS Smirnov, that were simply "relevant" at the time of trial, under Rule 16(a)(1)(B)(i) of the Federal Rules of Criminal Procedure.

Disclosure would also be consistent with what the Supreme Court has described as the prosecution's broader duty "to set the record straight," *Banks v. Dretke*, 540 U.S. 668, 676 (2004).

## II

## RELEVANT BACKGROUND

On August 15, 2021, Defendant filed his Motion for New Trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure. (Dkt. 315) On March 28th, 2022, Defendant filed his Supplemental Motion for New Trial ("Supplemental Motion") (Dkt. 388) with additional newly discovered grounds, that the Government failed to disclose to the defense the existence of certain relevant evidence, in violation of the ruling in *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny. The Supplemental Motion primarily argues that the Government failed to produce to the Defendant several recorded conversations and messages material to the matter before the Court, and in violation of Defendant's right to a fair trial and Due Process of Law.

On April 18, 2022, the Government filed a Supplemental Brief in Opposition to the Defendant's Supplemental Motion (Dkt. 398), in addition to a Declaration of FBI Special Agent Jeremy R. Tarwater (Dkt. 398-1). In Agent Tarwater's declaration, he identified that a text exchange between the co-operating witness, and one of the Defendant's co-conspirator's "***was not included*** *on the [FBI] Index, and* ***does not appear*** *in the repository folder on the FBI's system… [and] the Custodial Agent believes* ***this was an oversight***…" (Dkt. 398-1, pg. 7:9-21).

On May 11, 2022, the Court held an evidentiary hearing regarding the Defendant's Supplemental Motion. CHS Michael Forster ("CHS Forster") was produced to provide testimony regarding the missing evidence. During the hearing, CHS Forster was questioned by defense counsel regarding the missing evidence not produced by the Government. CHS Forster confirmed that he deleted thousands of text messages during the relevant period, many of which would have been text exchanges with the Defendant. (Dkt. 419, p.13:7-25; p.14:1-8). Moreover, in

providing reasoning for the missing evidence, CHS Forster provided two different explanations between the time of trial and the evidentiary hearing. (Dkt. 419, p.16:21-23). Additionally, CHS Forster confirmed that Agent Tarwater, nor any other member of the FBI ever pointed out to CHS Forster that missing portions of evidence were not turned over by CHS Forster. (Dkt. 419, p.27:6-17). When CHS Forster was questioned on why he lied to Defendant's co-conspirator about the "deal" being "alive" when at that point in time the deal was "dead," CHS Forster confirmed that his false representations were his "instructions or what [he] was following." (Dkt. 419, p. 61:1-4). On June 9, 2022, the Court denied Defendant's Supplemental Motion for New Trial.

## III

## LEGAL STANDARD

Under Federal Rules of Criminal Procedure, Rule 33, "upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." (Fed Rules of Crim. Procedure R. 33(a)). Moreover, "any motion for a new trial grounded on newly discovered evidence must be filed within 3 years after the verdict or finding of guilty." (Fed Rules of Crim. Procedure R. 33(b)(1)).

The 9th Circuit has held that the proper standard in granting a motion for new trial under Rule 33 on the ground of negligent nondisclosure of evidence by prosecutor, "should call for a new trial wherever nondisclosed evidence might **reasonably** have affected the jury's judgment **on some material point, without necessarily requiring a supplementary finding that it also would have changed its verdict.**" *United States v. Butler*, 567 F.2d 885, 890 (9th Cir. 1978) (*emphasis added*).

Moreover, "reversal follows whether the findings are interpreted as establishing bad faith or simply misinterpretation of the defense request… even if the court's findings were found only to establish negligent or unintentional instead of willful

nondisclosure of the prosecution's dealings... **reversal of the order denying a new trial would still be required.**"" *United States v. Butler* (1978), 567 F.2d 885, 889.

Additionally, the Supreme Court has explained that "...there are situations in which evidence is obviously of such substantial value to the defense that elementary fairness requires it to be disclosed even without a specific request. *United States v. Agurs* (1976), 427 U.S. 97, 110. Moreover, the Supreme Court has explained that "...the fact that such evidence was available to the prosecutor and not submitted to the defense places it in a different category than if it had simply been discovered from a neutral source after trial." *Agurs*, 427 U.S. 97, 110-111. Thus, it is "[f]or that reason the defendant should not have to satisfy the severe burden of demonstrating that newly discovered evidence probably would have resulted in acquittal." *Id* at 111.

## IV

## <u>ARGUMENT</u>

### A. Negligent Non-Disclosure by Prosecutor Standard

#### *1. Newly Discovered Evidence*

On March 24th, 2024, the Defendant became aware of the identity of a former CHS named Mr. Alexander Smirnov, through his indictment in the Central District of California. Case No. 2:24-cr-00091-ODW. The indictment alleges one count of providing false statement to a government agent, 18 U.S.C. §1001, and one count of falsifying records in a federal investigation, 18 U.S.C. §1519. More specifically, the indictment alleges the following: "*... when the Defendant was authorized to engage in illegal activity for investigative purposes, he was further admonished that 'Under no circumstances may the CHS ... Participate in an act that constitutes obstruction of justice (e.g., perjury, witness tampering, witness intimidation, entrapment, or fabrication, alteration, or destruction of evidence, unless such illegal activity has been authorized).' When the Defendant was given this admonishment, he signed an FBI form that contained this statement.*" Case No. 2:24-cr-00091-ODW, page 2 of

37. However, no such form nor confirmation of his authorization to engage in WRIT dealings were provided to the defendant.

Additionally, Mr. Smirnov has several ties to foreign countries such as Israel, Ukraine, Austria, and Czech Republic, among others. Upon the Defendant's review of the SEC's trading data for the relevant stock to this matter, "ASNT" several individuals are listed trading the relevant stock from brokerage accounts located in these foreign countries during the relevant time period. (Def. Trial Exhibits C, D).

In light of this new information, Defendant, through his appellant counsel Mr. Carl Gunn, reached out to AUSA Mark Rehe, requesting the following: "*evidence that is potentially exculpatory and may have been subject to disclosure under Rule l6 of the Federal Rules of Criminal Procedure… regarding a man named Alexander Smirnov, who was recently publicly revealed as a long-time FBI informant when he was indicted in connection with false statements made in the Hunter Biden investigation and there was subsequent extensive media coverage.*" (Exhibit A) In response to Mr. Gunn's request, AUSA Janaki Chopra provided the following response: "*I received the attached letter from AUSA Mark Rehe. I am assigned to the Hackett case in our office now. I have reviewed the case and your letter and made an inquiry regarding the allegations in your letter. Based on this, I believe the United States complied with its obligations under Rule 16, Brady, Jencks, and Giglio. As a result, there is no further discovery we anticipate producing in this case.*" (Exhibit B)

However, contrary to AUSA Chopra's representations, the SEC confirmed Defendant's suspicions that CHS Smirnov was the individual identified as Alex whom Defendant spoke with during the relevant investigation with the Government's primary trial witness CHS Forster.

Therefore, the declarations from the SEC, the criminal complaint against Mr. Smirnov, and the numerous news articles constitute newly discovered evidence.

***2. Newly Discovered Evidence Is Highly Material to The Issues at Trial***

The Government produced in discovery a recorded call between Defendant, a now known to be CHS Smirnov, CHS Forster, and "Denis" (an associate of CHS Smirnov). The conversation surrounds the "deal" "WRIT," and a transcript created by the FBI, along with the audio recording of the call (recorded by CHS Forster) was produced to the Defendant in discovery. (Exhibit C) The materiality of CHS Smirnov and WRIT is underscored in the Government's Motion in Limine.

On September 4, 2019, the Government, in its' Motion in Limine to "Admit the conspirators' references to other penny stock "deals" in describing the ASNT scheme," which included WRIT, stated the following:

> "*When discussing the contours of the ASNT conspiracy, the conspirators and Forster occasionally spoke about other deals as reference points.* ***These references to other deals are intrinsic evidence of the charged ... the evidence should be admitted because it shows defendants' knowledge, plan, and modus operandi surrounding pump-and-dump schemes."*** (Dkt. 172, p. 2, 19-28; 3:1-4).

Moreover, the Government underscores the materiality of the 404(b) evidence:

> "*The conspirators' references to other deals to describe aspects of the ASNT deal* ***constitute direct evidence of the conspiracy and securities fraud alleged in the indictment.***" (Dkt. 172, p.8:5-8)
>
> "*Dumping shares of* ***ASNT***, *...* ***WRIT*** *into an undercover agent's purported broker network. Hackett and Forster often discussed these stocks collectively in fluid conversation. Because the conspirators discussed each of these stocks in connection with, and to illuminate, the conspirators' plans and* ***actions with respect to ASNT, they are intrinsic evidence of the crimes for which Defendants are charged...***" (Dkt. 172, p.8:21-27).
>
> "*... Such intrinsic evidence includes evidence constituting a part of the transaction that serves* ***as the basis for the criminal charge****. ... Intrinsic evidence, however, also includes evidence that is necessary to permit the*

> *prosecutor to offer a coherent and comprehensible story regarding the commission of the crime. ... **This is because the jury cannot be expected to make its decision in a void—without knowledge of the time, place, and circumstances of the acts which form the basis of the charge**. ... This includes circumstantial evidence explaining the general nature of a defendant's business activity and **providing a context** in which the transactions at issue took place."* (Dkt. 172, p. 9:2-8)

Furthermore, the Government connects the references to WRIT with ASNT in stating that discussions about WRIT provide evidence of the Defendant's requisite state of mind necessary for the jury to reach a verdict at trial:

> ***"The conspirators discussed the contours of their agreement – <u>the same agreement that forms the basis for the conspiracy alleged in count 1 of the Indictment</u> – by referring to these deals. <u>Their discussion of these deals is therefore inextricably intertwined with the ASNT scheme</u>. Introduction of these conspiratorial discussions will <u>provide the jury with "knowledge of the time, place, and circumstances" surrounding the ASNT scheme</u>, and allow for a "coherent and comprehensible story regarding the commission of the crime....*** *"* (Dkt. 172, p. 9:11-18)

> *"The evidence undoubtedly proves several material points – Defendants' intent, knowledge of, and plan to perpetrate the ASNT scheme, the scope of their conspiratorial agreement, and their modus operandi surrounding pump-and-dump schemes...* ***Second, the discussions were not remote in time. In fact, the discussions were contemporaneous with the conspiratorial discussions about ASNT****. This is exactly why the United States seeks to introduce this evidence; the references to other deals were made to articulate, explain, and illuminate the ASNT scheme. As for the deals themselves, recorded calls make clear that Hackett was working on the ...* ***WRIT deals during the same period***

***he was engaged in active discussions regarding the ASNT scheme, i.e., October 2017 through at least January 2018.***" (Dkt. 172, p. 10:4-6,11-17)

Thus, as heavily argued by the government, discussions of WRIT are highly material to the charges against the defendant, yet Defendant was not provided the documentation such as WRIT brokerage records and other reports that the Government would have in their possession, from CHS Smirnov, yet denied providing these records to the defendant. Thus, being an example of prosecutor misconduct.

***3. The Newly Discovered Evidence Might Reasonably Have Affected the Jury's Judgment On Some Material Point***

Throughout the trial, the Government solely provided circumstantial evidence of the defendant's alleged criminal conduct, to which the jury was positioned to make inferences regarding the defendant's guilt. The core of the Government's case against Defendant focuses on the alleged participation in a manipulative trading scheme ("match trading"). However, as the Government stated during the motion in Limine hearing on November 20, 2019, "***We do not have forensic evidence about trades and match trades*** *with respect to* -- ***and we haven't sought it***..." (Dkt. 205, 35:15-16). This is a prime example of prosecutorial misconduct. The Government knows that CHS Smirnov was involved with WRIT and trading the WRIT stock in connection to the investigation of the defendant, yet the Government did not disclose to neither the defendant, nor the Court that such forensic evidence was available to the Government through FBI CHS Smirnov. Defendant was not a shareholder, nor selling stock of WRIT, since WRIT was CHS Smirnov's deal, as confirmed by CHS Forster:

"AH [Hackett]: Yeah we got myself, Andrew, [CHS], Denis and Denis's uh, client sorry wha- what's his name again?

D [Denis]: Alex.
AH [Hackett]: Alex.
D [Denis]: Yes, so we're all on so— CHS: I thin-I think [OV]

D [Denis]: -so it's-it's actually good timing [CHS] because uh, he actually just had stopped by my office. So it's actually perfect timing cause' he's-so anything we-questions you have, he's here uh, so you're not getting it second hand.

CHS [Forster]: Oh okay, I-I imagine I-I then have to assume that uh, WRIT is uh, is his deal so uhm,--

D [Denis]: Yes." (Exhibit C)

Not only has the Government withheld CHS Smirnov's identity, the Government, through the FBI, additionally falsely reports that Alex' last name is unknown. The Government intentionally reports this falsity to justify the non-disclosure of relevant evidence to the defendant and allows the Government to lie to the court. The Government had access to "forensic evidence" of CHS Smirnov's WRIT trading records, yet the non-disclosure of such forensic evidence to Defendant constitutes prosecutorial misconduct. However, now knowing CHS Smirnov is an FBI informant, Exhibit D which is a WRIT match trading report, is misleading. Nowhere in the report does the FBI show CHS Smirnov's trades of WRIT. Such evidence would show point blank if a "matched trade" occurred. Non-disclosure of this fact allows the Government to continue their false narrative that Defendant was conducting illegal trades, while concealing the definitive facts and misrepresenting to the Court that it did not seek forensic evidence. Below is the document title of Exhibit D, an FBI report alleging to document Defendant's match trades with CHS Forster in WRIT:

'D-1057 (Rev. 5-8-10)

OFFICIAL RECORD

UNCLASSIFIED

FEDERAL BUREAU OF INVESTIGATION

Electronic Communication

**Title:** (U) Document match trading between UCE and ANDREW HACKETT in "WRIT" **Date:** 02/20/2018

(Exhibit D, p. 1)

Contained within Exhibit D, the FBI outlines CHS Smirnov's involvement with WRIT:

> WRIT News Releases:
>
> As documented elsewhere, HACKETT, ALEX last name unknown (described as a company executive at WRIT), and "DENIS" (a broker known to be JOSEPH PADILLA) had previously discussed with CHS a list of WRIT news releases ready to be disseminated in coordination with stock promotion and/or liquidity campaigns. A list of news releases was provided by DENIS/ALEX (proton user names not ascertained) to HACKETT to CHS via proton on 1/11/2018 (see attached).

(Exhibit D, p. 4).

In the portion of exhibit D, depicted above, the FBI states that CHS Smirnov's username was not "ascertained." However, CHS Smirnov, as an FBI CHS would have been obligated to provide all his email/encrypted messaging accounts to the FBI, especially while engaging with targets of FBI investigations. Yet, the FBI had an obligation to obtain CHS Smirnov's account information certainly after appearing on a recorded call with another CHS, and after being documented in an FBI report during an investigation. This example of concealment of information pertaining to its own CHS by the FBI during its investigation of the defendant should have been presented to the jury to cast doubt on the credibility of its investigation of the defendant. Nevertheless, evidence documented from CHS Smirnov's involvement with WRIT, the defendant, and CHS Forster reasonably would have affected the jury's judgment and most certainly, as stated by the Government, was important for the alleged criminal accusation. In the example of WRIT, CHS Smirnov controlled the WRIT shares, and the FBI would have had access to his shares and trading records or reports of his conduct with WRIT and all other communications CHS Smirnov had pertaining to WRIT. The man referenced as Denis was CHS Smirnov's broker who had access to sell the WRIT shares for CHS Smirnov, yet no recordings or documents of their communication, no records of any sort, no reports were disclosed to Defendant by the Government. This is prosecutorial misconduct at its

finest. The referenced agreement with the FBI and CHS Smirnov classifies this as "Obstruction of justice." This evidence could have been so damaging to the Government's theory of Defendant's intent that the Government purposely did not disclose such evidence to the defendant in order to maintain its misleading theory that relies solely on circumstantial evidence rather than forensic evidence the Government had available. CHS Smirnov would have authorization to conduct WRIT trades, communicate with targets such as the defendant and CHS Smirnov's associate Denis, and would have to provide documentation to the FBI regarding his involvement with WRIT and or the ASNT/HVST scheme. Yet, none of this was turned over to Defendant.

The best evidence of Defendant's state of mind would have been produced through CHS Smirnov's reports, recordings, records and most importantly brokerage records collected while working with the FBI and conducting trades of WRIT and having CHS Forster "promote" WRIT by having the FBI conduct buy orders of the stock. However, even though both parties involved with trading WRIT in this instance were informants with the FBI, the Government only provided the buy orders of WRIT (Exhibit E, p. 23, 28), and if CHS Smirnov did not sell WRIT shares then that exculpatory evidence needs to be turned over to the defendant in the form of brokerage records. Again, this allowed the Government to maintain its misleading case against the defendant by presenting solely circumstantial evidence at trial, rather than forensic trading records it had access to. Essentially, only providing the defendant a misleading report produced by the FBI and the fact the Government continues to refuse to disclose the relevant documents is clearly prosecutorial misconduct.

During its Motions in Limine, the Government submitted a substantial and thorough argument as to why discussions of WRIT should be presented to a jury at trial. However, the Defendant should also have been afforded the same opportunity to

introduce relevant evidence in support of his defense—that the defendant does not possess the requisite state of mind for both charges alleged by the Government.

The Government's closing remarks to the jury at trial describe the significance of the transfer agent form, which states in pertinent part that the defendant did not make nor propose to make any payment in connection with the offer or sale of the shares being deposited. (Dkt. 345, p. 722: 22-24). The Government stated that misrepresenting "*on that and that alone, ladies and gentlemen, you can convict Andrew Hackett for securities fraud. It is a misrepresentation or omission in connection with* ***the sale or purchase of securities****. That and that alone is a basis to convict... This is enough. It's also enough to convict on the conspiracy count...*" (Dkt. 345, p.724:18-25)

However, CHS Smirnov's WRIT trades would have been the only forensic evidence provided to the jury during trial to show that the defendant's lack of the requisite state of mind required for both securities fraud and conspiracy charges. Such forensic evidence would have reasonably affected the jury's judgment on whether the defendant misrepresented on the transfer agent form—on the highly material point that Defendant did not make and did not propose to make any payment in connection with the offer or sale of the shares being deposited and would have created serious doubt about the Government's theory of the case at trial for the jury. Instead, prosecutorial misconduct was the easier route for the Government, in order to present a misleading case to the jury. The Government continues this by not disclosing the evidence collected by CHS Smirnov to the defendant.

## V

## CONCLUSION

The materiality of the newly discovered evidence is undeniable, as is the standard set by the 9th Circuit. The test applicable to claims of negligent prosecutorial non-disclosure of evidence essential for or at least useful to the full

presentation of the defense requires a new trial whenever the non-disclosed evidence *might* reasonably have affected the jury's judgment on *some* material point. *Butler*, 567 F.2d 885, 890 (9th Cir. 1978). As the Government has said in its own words, the WRIT deal in and of itself is intrinsic evidence of Defendant's state of mind regarding both charged counts concerning ASNT. This is more than a mere material point, rather, this evidence, as the Government vehemently stated is the modus operundi of both charges against the defendant. The heart of the Government's allegations against the defendant surrounds his intent to engage in manipulative trading through a match trading scheme. However, Defendant and CHS Smirnov's interactions and reports concerning WRIT would have reasonably affected the jury's judgment on whether the Defendant sold his stock in connection with any proposed sales. Instead, the intentional non-disclosure of such evidence allowed the Government to mislead the jury, deceive the Court during its Motions in Limine, and provide a false presentation of the facts at trial. Additionally, the defendant was denied evidence that was, at a minimum, useful to his defense at trial. The decision of whether to call CHS Smirnov as a witness in the defendant's defense was his decision to make, not the Government's. The Government purposely continues to withhold disclosure of such evidence, in violation of the defendant's due process rights.

For the reasons stated above, the defendant respectfully requests that this Court grant Defendant's Motion for New Trial.

Dated:

/s/ Andrew Hackett

Andrew Hackett (pro se)
Defendant
Email: andrewyge@gmail.com